UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AMERANTH, INC.

Plaintiff,

v.

BRINK SOFTWARE, INC., a California corporation; and PAR TECHNOLOGY CORPORATION, a Delaware corporation,

Defendants.

AND RELATED COUNTERCLAIMS

Case No.: 3:25-cv-2302-RSH-BLM

**ORDER ON PLAINTIFF'S MOTIONS (1) TO STRIKE AFFIRMATIVE DEFENSES AND (2) TO DISMISS AND STRIKE COUNTERCLAIMS**

[ECF Nos. 20, 30, 35]

Before the Court are motions to strike affirmative defenses, ECF No. 20, and to dismiss and strike counterclaims, ECF No. 30, filed by plaintiff Ameranth, Inc. ("Ameranth") against defendants Brink Software, Inc. ("Brink") and PAR Technology Corporation ("PAR"). Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motions appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part both motions.

# I. BACKGROUND

## A. Parties' Allegations

This case arises from a dispute as to the terms of a licensing agreement between

Ameranth and defendants PAR and Brink, PAR's subsidiary. The Amended Complaint, ECF No. 18, and Amended Counterclaim, ECF No. 25, allege as follows.

### *1. The Brink Licensing Agreement*

Ameranth is a "computing technology and intellectual property licensing" company located in San Diego, California. ECF No. 18 ¶ 12. Between 2006 and 2008, Ameranth developed multiple products, including a prototype hosted point-of-sale software system. *Id.* In 2008, Ameranth halted new product development to focus on intellectual property licensing. *Id.* ¶ 13.

In late 2008, four former employees of Ameranth founded defendant Brink, a company that provides cloud-based point-of-sale software to restaurant clients. *Id.* ¶ 14; ECF No. 25 ¶ 82. In 2011, Brink and Ameranth entered into a licensing agreement ("Brink Licensing Agreement"). ECF Nos. 28 ¶ 17; 25 ¶ 85. The Brink Licensing Agreement granted Brink a "Patent License" for certain "Licensed Patents," which the agreement defined as a group of three patents—U.S. Patent Nos. 6,384,850, 6,871,325, and 6,982,733—"all reissues and reexaminations" of these patents, and "all patents claiming priority from any applications from which any of the" patents issued. ECF No. 18, Ex. A § 1.3. The license was limited to a defined "Field of Use," specifically "use for customer/consumer online/mobile and/or call center food/drink ordering and/or menu hosting." *Id.* Ex. A §§ 1.2, 2.1.1.

Brink was required to make two lump sum payments "in consideration for the Patent License for the period up to and including" the year following the signing of the contract, *id.* § 5.1, and to pay "an ongoing royalty for Brink's online/mobile food/drink ordering/menu hosting system/service for the period" following the period covered by the lump sum payments, *id.* § 5.2. The agreement provided that license fees would no longer be due "if all claims of Ameranth's Licensed Patents are <u>finally</u> held invalid and/or the patents are held to be unenforceable (after all appeals are exhausted) prior to the date that such fees are otherwise due . . . ." *Id.* § 5.3 (emphasis in original).

//

### *2. PAR Acquires Brink and Ceases Royalty Payments*

In 2014, PAR acquired Brink and integrated Brink's line of services into its own systems. ECF Nos. 18 ¶ 28; 25 ¶ 92. Although PAR had its own licensing agreement with Ameranth, PAR continued paying royalties to Ameranth under the Brink Licensing Agreement. ECF Nos. 18 ¶ 29; 25 ¶ 98.

In 2020, PAR ceased paying royalties to Ameranth under both the Brink Licensing Agreement and its own licensing agreement. ECF Nos. 18 ¶¶ 32-34; 25 ¶ 99. As grounds for nonpayment, Defendants cited the alleged invalidity of Ameranth's patents, and the fact that PAR no longer sold Brink software or services. ECF No. 25 ¶¶ 95, 101, 103, 106. In response, Ameranth declared PAR to be in breach of the Brink Licensing Agreement. ECF Nos. 18 ¶ 33; 25 ¶ 104. The Parties proceeded to mediation in early 2021 but failed to resolve their dispute. ECF Nos. 18 ¶ 36; 25 ¶ 110.

### *3. Subsequent Ameranth Patents*

Since the Parties' failed mediation, Ameranth has continued to apply for and obtain patents in the same family as the Licensed Patents ("Ameranth Patent Family"): U.S. Patent Nos. 10,970,797 ("'797 Patent"), 11,276,130 ("'130 Patent"), 11,842,415 ("'415 Patent"), 11,847,587 ("'587 Patent"), and 12,293,425 ("'425 Patent"). ECF Nos. 18 ¶¶ 37, 55; 25 ¶¶ 112, 116, 123. Ameranth also obtained two additional patents: U.S. Patent Nos. 11,770,304 ("'304 Patent") and 11,985,039 ("'039 Patent"), that are not part of the Ameranth Patent Family. ECF No. 25 ¶¶ 11, 12.

Following the issuance of the '797 Patent in 2021, defendant PAR sent Ameranth notice that it believed the patent was invalid. ECF Nos. 18 ¶ 39; 25 ¶ 112.

On June 10, 2025, the month after the '425 Patent was issued, Ameranth sent Defendants a letter informing them of the issuance of the '130, '415, '587, and '425 Patents; asserting that Defendants owed royalties pursuant to these patents; and requesting a management discussion pursuant to § 9.2.2 of the Brink Licensing Agreement. ECF Nos. 18 ¶ 58; 25 ¶ 123.

On June 27, 2025, Defendants responded, asserting that these subsequently issued

patents were invalid; that Brink had not sold or licensed any products since 2020; that the Brink Licensing Agreement had expired/terminated; and that Defendants believed all issues between the Parties were resolved, as they had not heard from Ameranth for five years. ECF Nos. 18 ¶ 59; 25 ¶ 124.

**B. Procedural History**

On July 23, 2025, Ameranth brought this action in San Diego Superior Court to recover royalty fees under the Brink Licensing Agreement. ECF No. 1 ¶¶ 1-3. The Complaint asserted three causes of action: (1) breach of contract; (2) declaratory relief; and (3) unjust enrichment. ECF No. 1-2.

On September 3, 2025, Defendants filed an Answer. *Id.* Ex. B. The following day, Defendants filed a Counterclaim seeking declaratory judgments of non-infringement, invalidity, unenforceability, and patent misuse as to patents that Ameranth contends fall within the scope of the Brink Licensing Agreement: the ’130, ’415, ’587, ’425, ’304, and ’039 Patents. *Id.*, Ex. C. That same day, Defendants removed the case to this Court under 28 U.S.C. § 1454. ECF No. 1 ¶ 10.

On October 20, 2025, Ameranth filed an Amended Complaint to correct the inadvertent omission of exhibits from its original Complaint. ECF Nos. 17, 18. On November 10, 2025, Ameranth filed a motion to remand, as well as a motion to dismiss Defendants’ Counterclaim for lack of subject matter jurisdiction, and a motion to strike Defendants’ Answer and Counterclaim. ECF No. 20. On January 9, 2026, Defendants filed an Amended Counterclaim that withdrew their counterclaims requesting a declaratory judgment of patent non-infringement, and added a counterclaim for equitable estoppel. ECF Nos. 25, 25-2 (redline of changes to the original counterclaim). Ameranth again moved to strike and dismiss the Amended Counterclaim. ECF No. 30. On March 5, 2026, the Court denied Ameranth’s motion to remand. ECF No. 31.

The motion to strike Defendants’ Answer, ECF No. 20, is fully briefed, ECF Nos. 26 (Opposition), 29 (Reply), as is the motion to dismiss and strike the Amended Counterclaim, ECF Nos. 30, 32 (Opposition), 34 (Reply). Defendants filed an ex parte

application for leave to file a sur-reply in support of their opposition to the motion to dismiss the Amended Counterclaim, ECF No. 35, which Ameranth opposed, ECF No. 36.

## II. LEGAL STANDARD

### A. Motion to Dismiss

#### *1. Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)*

Rule 12(b)(1) allows a party to move to dismiss based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). Article III standing requires that a plaintiff show that he or she (1) has "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The party bringing the claim has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000).

#### *2. Failure to Plead a Claim Pursuant to Rule 12(b)(6)*

"A motion to dismiss a counterclaim is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[.]" *Alvarez v. XPO Logistics Cartage, LLC*, No. 2:18-CV-03736-SJO-E, 2020 WL 1289550, at *1 (C.D. Cal. Feb. 6, 2020). A motion to dismiss under Rule 12(b)(6), in turn, "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

***3. Failure to Plead Fraud with Particularity Pursuant to Rule 9(b)***

For claims alleging "fraud or mistake," a heightened pleading standard applies. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," including "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1066 (9th Cir. 2004)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." (citation and internal quotation marks omitted)). A pleading must also identify "what is false or misleading about the purportedly fraudulent statement, and

why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).

**B. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citation omitted). "Motions to strike are generally disfavored," and they "generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation." *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (citations omitted). "As with other challenges to a party's pleading, [w]hen ruling on a motion to strike, th[e] Court must view the pleading under attack in the light most favorable to the pleader." *Doe v. Regents of Univ. of California*, No. 22-CV1506 JLS (AHG), 2024 WL 171387, at *1 (S.D. Cal. Jan. 16, 2024) (internal quotation marks omitted).

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense. It does not, however, require a detailed statement of facts." *Kohler v. Islands Rests., LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012) (citation omitted).

**III. DISCUSSION**

**A. Motion to Dismiss Amended Counterclaims for Lack of Subject Matter Jurisdiction**

Ameranth moves to dismiss Defendants' declaratory judgment counterclaims for lack of subject matter jurisdiction, contending that no justiciable "case or controversy"

underlies Defendants' counterclaims for declaratory judgments of patent invalidity, unenforceability, and patent misuse. ECF No. 30-1 at 10-13.

Defendants seek declaratory judgments that the '130, '415, and '587 Patents are invalid (Counterclaims 5-7);[1] that the '425 Patent is unenforceable due to Ameranth's inequitable conduct during the patent's prosecution (Counterclaim 11); and that Ameranth engaged in misconduct constituting patent misuse regarding the '130, '415, '587, and '425 Patents (Counterclaim 12).[2] ECF No. 25 at 24-34. Defendants allege that the purported invalidity and unenforceability of the patents establishes a case or controversy because those patents form the basis for Ameranth's breach of contract claims against Defendants. *Id.* ¶¶ 131, 136, 141, 146, 159.

Ameranth argues that because it is legally estopped from suing Defendants for infringement of any of these patents by both the Brink Licensing Agreement itself and Ameranth's covenants not to sue, Defendants lack standing to seek declaratory judgments regarding the patents' invalidity or unenforceability. ECF No. 30-1 at 10-12.

Defendants counter that the dispute over whether Defendants owe royalties for the Licensed Patents under the Brink Licensing Agreement—specifically, whether Defendants' asserted 2020 repudiation relieved them of those obligations—supplies the

---

[1] In Defendants' proposed sur-reply, ECF No. 35, they agree that Ameranth's covenant not to sue on the '425 Patent renders moot Counterclaim 8, their invalidity counterclaim for this patent. ECF No. 35-1 at 1 n.1. The Court grants leave to file the sur-reply. Counterclaim 8 is dismissed as moot.

[2] Ameranth also argues that Defendants lack standing to seek declarations of invalidity as to the '304 and '039 Patents, because those patents are not Licensed Patents under the Brink Licensing Agreement and their validity has no bearing on the instant lawsuit. ECF No. 30-1 at 14. In response to Defendants' assertion that the patents' validity impacts the PAR Licensing Agreement (rather than the Brink Licensing Agreement), ECF No. 25 at 28-29, Ameranth covenanted not to sue for infringement of the '304 and '039 Patents, ECF No. 34 at 7. In Defendants' sur-reply, they agree that this covenant not to sue renders moot Counterclaims 9 and 10. ECF No. 35-1 at 1. Counterclaims 9 and 10 are therefore dismissed as moot.

necessary case or controversy. *See* ECF No. 32 at 7 ("Ameranth's dispute of the scope of the 2020 notice and repudiation itself creates a case or controversy." (first citing *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1310 (Fed. Cir. 2011); and then citing *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 135-36 (2007))).

The Court agrees with Defendants that their declaratory judgment counterclaims present a justiciable case or controversy. Whether Defendants owe royalties under the Brink Licensing Agreement turns, at least in part, on the validity and enforceability of the Licensed Patents covered by the Brink Licensing Agreement. *See* ECF No. 18, Ex. A § 5.3. The Supreme Court has made clear that where, like here, a defendant "refus[es] to make royalty payments under [a] . . . license agreement," "[t]here is no dispute that [the case-or-controversy] standards [are] satisfied." *MedImmune*, 549 U.S. at 127-28. This is true regardless of whether Ameranth covenants not to sue for infringement. Ameranth's contentions that Defendants did not repudiate the Brink Licensing Agreement, and that the validity of the patents has no impact on Defendants' royalty obligations, go to the merits of this dispute. If Ameranth is correct, "the consequence would be that [Ameranth] win[s] this case *on the merits*"—i.e., Defendants owe royalties under the Brink Licensing Agreement—"*not* that the very genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated." *Id*. at 135-36.

For purposes of the instant motion to dismiss, the Court concludes that Defendants alleged a case or controversy sufficient to establish subject matter jurisdiction for Counterclaims 5-7, 11, and 12 and denies Ameranth's motion to dismiss those counterclaims.

**B. Motion to Dismiss Amended Counterclaims for Insufficient Pleading**

***1. Failure to Plead Inequitable Conduct Regarding the '425 Patent***

Ameranth moves to dismiss Counterclaim 11, which seeks a declaration of unenforceability of the '425 Patent, ECF No. 25 ¶¶ 158-84, on the grounds that Defendants failed to plead inequitable conduct with the specificity required by Rule 9(b), ECF No. 30-1 at 19-22.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The elements of inequitable conduct are "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution. *Dig. Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *see Exergen*, 575 F.3d at 1327 n.3. In alleging such a claim, "there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference." *Dig. Control Inc.*, 437 F.3d at 1313 (quoting *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998)). "The materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291. Claims of inequitable conduct are subject to Rule 9(b)'s pleading standards. *Id.* at 1327.

In Counterclaim 11, Defendants allege that during the prosecution of the '425 Patent, Ameranth "intentionally misled the PTO about" the patent's priority date, "and withheld material prior art from the Patent Office with a specific intent to deceive the Patent Office." ECF No. 25 ¶ 161. Had it not been for these misrepresentations, Defendants allege, the '425 Patent would not have issued. *Id.* ¶ 181.

Defendants allege that Ameranth misrepresented the '425 Patent's priority date as follows. The '425 Patent application was filed on December 23, 2022 as a continuation-in-part of patents tracing priority to July 26, 2005. Defendants allege that all of the issued claims of the '425 Patent depend on newly added matter and are entitled only to a

December 23, 2022 effective filing date. ECF No. 25 ¶ 163. According to Defendants, Ameranth nevertheless represented to the PTO that the application "at no time included any claims directed to new matter." *Id.* ¶ 166. As a result, the Examiner allegedly treated the '425 Patent claims as being entitled to the earlier July 26, 2005 priority date and therefore did not consider otherwise qualifying prior art published between 2005 and 2022, materially affecting the Examiner's patentability analysis. *Id.* ¶ 168.

To support their contention that Ameranth's CEO and attorneys were aware of qualifying prior art that should have been assessed by the PTO in its examination of the '425 Patent, Defendants allege that in two patent infringement suits against DoorDash, Ameranth identified over 100 exhibits that are examples of such prior art. *Id.* ¶¶ 169-73, Exs. 8, 9 ("DoorDash Prior Art"). According to Defendants, the DoorDash Prior Art is "highly material to the patentability of the '425 Patent" because Ameranth used it in its suits against DoorDash to allegedly "prove[] infringement of the '130, '415, and '587 Patents"—patents that are "substantially similar" to the '425 Patent. *Id.* ¶ 173. Thus, Defendants allege, by "fail[ing] to disclose . . .the DoorDash Prior Art" to the PTO, Ameranth's CEO and attorneys "breached their duty of good faith and candor in dealing with the [PTO]" under controlling regulations. *Id.* ¶ 180.

Ameranth first contends Defendants fail to identify which claims are entitled only to the later December 23, 2022 filing date and why. ECF No. 30-1 at 19-22. The Court is not persuaded. As Defendants note, Defendants' Cross-Complaint alleges that the '425 Patent application added new disclosures "directed to, among other things, cloud-based servers and 'mini-apps'" and that all of the issued claims are directed to this new matter. ECF No. 25 ¶ 163. These allegations identify both the claims at issue and the asserted basis for the later effective filing date. Ameranth neither cites authority requiring greater specificity at the pleading stage nor meaningfully addresses Defendants' response.

Ameranth next argues that Defendants fail to adequately allege materiality because the Examiner's prior art search identified a reference with a 2015 priority date, which Ameranth argues demonstrates that the Examiner *did* consider post-2005 prior art

notwithstanding the alleged misrepresentation. ECF No. 30-1 at 25. The Court is not persuaded, as this argument goes to the facts rather than the pleading standard. Defendants sufficiently pleaded that the incorrect priority date was "but-for" material because "the PTO would not have allowed a claim had it been aware of the" correct priority date. *Therasense*, 649 F.3d at 1291; ECF No. 25 ¶ 181.

Finally, Ameranth argues that Defendants' inequitable conduct theory conflicts with their allegations that the claims of the '425 Patent are patentably indistinct from claims of earlier family patents held ineligible under § 101. ECF No. 30-1 at 21. Again, the Court is not persuaded. The inequitable conduct theory concerns whether Ameranth misrepresented to the PTO that the '425 Patent application contained claims directed to new matter. By contrast, whether those claims are patentably indistinct from earlier claims for purposes of § 101 concerns whether, notwithstanding the added matter, they remain directed to the same patent-ineligible subject matter. Ameranth does not meaningfully address how one would foreclose the other.

For these reasons, the Court concludes that Ameranth has not met its burden of demonstrating that Counterclaim 11, based on the theory that Ameranth misrepresented the '425 Patent's priority date, should be dismissed. Because Counterclaim 11 survives on this theory, the Court declines to analyze Defendants' allegations regarding the withholding of the DoorDash Prior Art as a distinct theory. *See Gonzalez v. Probuild Co., LLC*, No. EDCV 22-00315-CJC (SHKx), 2022 LX 127340, at *8 (C.D. Cal. July 7, 2022) (collecting cases declining to parse theories of liability when party prevails on at least one theory).

Ameranth's motion to dismiss Counterclaim 11 is denied.

### *2. Failure to Plead Patent Misuse*

Ameranth moves to dismiss Counterclaim 12 for a declaratory judgment of patent misuse on the grounds that Defendants failed to plead conduct that qualifies as patent misuse. ECF No. 30-1 at 22-24.

"Patent misuse is an equitable defense to patent infringement." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005). The doctrine "arises from the

equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). The defense is "grounded in the policy-based desire to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (internal quotation marks omitted).

"[T]he key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." *Princo*, 616 F.3d at 1328. "[T]he doctrine of patent misuse has largely been confined to a handful of specific practices by which the patentee seemed to be trying to extend his patent grant beyond its statutory limits." *Id*. at 1329 (quotation omitted). "[A] holding of misuse renders the patent unenforceable until the misuse is purged[.]" *C.R. Bard*, 157 F.3d at 1372. Even though patent misuse is an affirmative defense, courts routinely permit counterclaims for declaratory judgments of patent misuse. *See ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 973 (C.D. Cal. 2017) (collecting cases).

Defendants allege two theories of patent misuse. First, Defendants allege that Ameranth impermissibly extended the temporal scope of patents it knew to be invalid, by using them as the parent patents from which it obtained continuation patents. ECF No. 25 ¶¶ 187-88. Specifically, Defendants allege that because the claims of the '130, '415, '587, and '425 Patents are "patentably indistinct from the claims of the '077 and '651 Patents that the Federal Circuit held are patent ineligible under 35 U.S.C. § 101," Ameranth now seeks royalties on patents it knows to be invalid. *Id.* Defendants' second theory of misuse is that Ameranth "is now asserting that Defendants pay royalties for the Ameranth Patent Family on activities that fall within the scope of a 'Field of Use,' but do not fall within the scope of the patent claims of the Ameranth Patent Family." *Id.* ¶ 189.

"[C]ourts construe the doctrine of patent misuse narrowly." *Broadband Itv, Inc. v. Opentv, Inc.*, No. 17-cv-06647-SK, 2018 LX 15287, at *15 (N.D. Cal. Feb. 22, 2018)

(citing *Princo,* 616 F.3d at 1321 ("Because patent misuse is a judge-made doctrine that is in derogation of statutory patent rights against infringement, this court has not applied the doctrine of patent misuse expansively.")). The Federal Circuit has cautioned that "the body of misuse law and precedent need not be enlarged into an open-ended pitfall for patent-supported commerce," and that "[i]t is not patent misuse to bring suit to enforce patent rights not fraudulently obtained, nor is otherwise legal competition such behavior as to warrant creation of a new class of prohibited commercial conduct when patents are involved." *C.R. Bard*, 157 F.3d at 1373. *See Engel Indus. v. Lockformer Co*., 96 F.3d 1398, 1408 (Fed. Cir. 1996) (declining to find patent misuse where licensee alleged that patentholder coerced licensee into paying royalties on unpatented parts of patented system, and stating "there is nothing per se illegal about" a patentholder "aggressively enforc[ing] its rights").

Here, Defendants' theories of patent misuse do not appear to fall into the categories of behavior that courts have recognized as patent misuse. *See* 6A Chisum on Patents § 19.04 (2026) (enumerating acts of misuse).

As to the first theory, Defendants cite no authority demonstrating that obtaining continuation patents that claim priority to ineligible patents is patent misuse. *See* ECF No. 32 at 20-21. As to the second theory, the Supreme Court has held that patent misuse occurs in the context of royalty agreements when "a royalty agreement . . . projects beyond the expiration date of the patent," *Brulotte v. Thys Co*., 379 U.S. 29, 32-33 (1964), or when the grant of the patent license is conditioned "upon payment of royalties on products which do not use the teaching of the patent," *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 135 (1969). In *Zenith Radio*, the Supreme Court elaborated that such misuse occurs when a patentee "coerce[s] an agreement" that "insist[s] on a percentage-of-sales royalty, regardless of use," even over the licensee's "protestations" and "proposals to pay only for actual use." 395 U.S. at 139-40. Although Defendants' second theory bears some resemblance to the scheme the Supreme Court found unlawful in *Zenith Radio*, it falls outside the bounds of the contracting behavior prohibited by that opinion, as here,

Defendants' patent misuse allegations focus on Ameranth's conduct in the instant litigation, rather than the language of the contract itself. Here, the Brink License Agreement covers Brink's use of only the "*Licensed Patents* within the Field of Use"—an arrangement that does not run afoul of *Zenith Radio*. ECF No. 25 ¶ 87 (emphasis added).

Subject to the narrow construction of the patent misuse doctrine, and in the absence of Defendants providing authorities that adequately support their theories, the Court declines to recognize Defendants' theories, as pleaded, as forms of patent misuse.

For these reasons, the Court grants Ameranth's motion to dismiss Counterclaim 12.

***3. Failure to Plead Equitable Estoppel***

Ameranth moves to dismiss Counterclaim 13, Defendants' equitable estoppel counterclaim, as insufficiently pleaded. ECF No. 30-1 at 24-25.

In patent infringement cases, "[w]here an alleged infringer establishes the defense of equitable estoppel, the patentee's claim may be entirely barred." *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). "Three elements are required for equitable estoppel to bar a patentee's suit: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*, 709 F.3d 1124, 1130 (Fed. Cir. 2013). The equitable estoppel defense is a matter committed "to the sound discretion of the trial court." *Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1378 (Fed. Cir. 2025).

"The first element of equitable estoppel requires [Ameranth] to have made a misleading communication, either affirmatively or by omission, to [Defendants]." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1349 (Fed. Cir. 2014), vacated in part on other grounds, 580 U.S. 328 (2017). "In general, 'silence alone will not create an estoppel unless there was a clear duty to speak,' or unless a patent

owner's 'continued silence' reinforces an accused infringer's inference that the patent owner has acquiesced to the infringer's conduct." *Fraunhofer*, 138 F.4th at 1379 (quoting *Aukerman*, 960 F.2d at 1043-44). To satisfy the reliance element of equitable estoppel, "[Defendants] must show that [they], in fact, substantially relied on the misleading conduct of [Ameranth] in connection with taking some action. . . . To show reliance, [Defendants] must have had a relationship or communication with [Ameranth] that 'lull[ed]' [them] into a 'sense of security' in continuing [their] use of the accused [product]." *Id.* at 1380 (quoting *Aukerman*, 960 F.2d at 1042-43).

Defendants allege that Ameranth's silence between the dates of their failed 2021 mediation and Ameranth's June 2025 demand letter misled them into believing that Ameranth had abandoned its contract claim. ECF No. 25 ¶¶ 191-201. They interpreted this silence as acquiescence, because Ameranth had been threatening litigation but did not act on this threat, and an examination of Ameranth's litigation history revealed to Defendants that "in previous breach of contract cases against licensees of the Ameranth Patent Family, Ameranth either sued promptly after required mediation, or continued to send quarterly threats of suits and then sued within two years." *Id.* ¶ 195; ECF No. 32 at 23. Defendants allege that had they not believed Ameranth had abandoned its breach of contract claim, they would have invested resources into invalidating Ameranth's existing patents and its new patents as they issued, rather than into expanding their own business within the alleged "Field of Use" for which they purportedly owe royalties. ECF No. 25 ¶¶ 196-97.

Ameranth challenges the adequacy of Defendants' pleading of the first two elements of equitable estoppel, claiming first that it was not "silent," because it announced its patents on its website; and second, that Defendants' investment in its business is more indicative of Defendants' belief that the Brink License Agreement was terminated than of their reliance on Ameranth's alleged silence. *Id.* (first citing *JLC-Tech LLC v. Luminos Glob., Inc.*, No. 25-CV-15-RSH-JLB, 2025 WL 2721822, at *6 (S.D. Cal. Sept. 24, 2025) (concluding that the accused infringer's continuation of its business operations reflected its belief that its products did not infringe the patents, rather than its belief that the patentholder

had abandoned its claim); and then citing *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) (concluding that the accused infringer "ignored" charges of infringement because he believed the patent was invalid)).

Plaintiff's arguments are based on factual disputes rather than the adequacy of Defendants' equitable estoppel claim as alleged. Defendants have sufficiently pleaded the equitable estoppel elements that Ameranth challenges. First, Defendants alleged that Ameranth's silence, in the context of its previous litigation history, reinforced Defendants' inference that Ameranth had abandoned its breach of contract claim. *See Fraunhofer*, 138 F.4th at 1379. Ameranth assured Defendants that it would "seek the appropriate legal resolution" in court if mediation failed, ECF No. 25 ¶ 102, yet after the prompt mediation failed, Ameranth waited four and a half years before initiating this lawsuit, *id.* ¶¶ 110-17. Defendants also sufficiently pleaded reliance on Ameranth's alleged silence. Defendants allege that after the mediation failed, there were no repeated threats that Defendants chose to ignore when they continued their business expansion, and that they relied on Ameranth's silence when investing in their business, rather than on a subjective belief that the patents were invalid. *See* ECF No. 32 at 24. Defendants further allege that had Ameranth not "sat on its rights," they would have expended resources to invalidate the patents underlying the Brink Licensing Agreement, or they would have diverted resources to marketing and developing other products that were not in the challenged "Field of Use." ECF No. 25 ¶¶ 196-97.[3] These allegations suffice at the pleading stage.

Ameranth's motion to strike Counterclaim 13 is denied.

---

[3] Both *Gasser* and *JLC-Tech* discuss circumstances that are distinguishable from the facts alleged here. In *Gasser*, the infringer cited his belief that the patent was invalid as the reason he did not cease his activity in the face of the patentholder's repeated threats of litigation and attempts at agreement over several years. 60 F.3d at 772. In *JLC-Tech*, this Court determined that the defendant's reliance allegations were conclusory, and that it did not sufficiently allege why its decision to continue its business operations was "not a consequence of its own business judgment." 2025 WL 2721822 at *6.

### C. Motion to Strike Answer and Amended Counterclaims

#### *1. Motion to Strike Answer as Insufficiently Pleaded*

Ameranth moves to strike Defendants' inequitable conduct, patent misuse, equitable estoppel and unclean hands defenses as insufficiently pleaded. ECF No. 20-1 at 30; *see* ECF No. 2 ¶¶ 10 (Sixth Defense; patent misuse), 12 (Seventh Defense; estoppel), 14 (Ninth Defense; inequitable conduct), 17 (Twelfth Defense; unclean hands).

The Court evaluates Defendants' affirmative defenses under the Rule 12(f) "fair notice" pleading standard. *See Wyshak*, 607 F.2d at 827. Allegations of inequitable conduct must also meet Rule 9(b)'s pleading standard, *Exergen*, 575 F.3d at 1326, as must allegations underlying unclean hands defenses to the extent they are based on fraudulent conduct, *see Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 471 (S.D. Cal. 2013).

Defendants' affirmative defenses of equitable estoppel and unenforceability due to inequitable conduct meet Rule 12(f)'s pleading standard. While both affirmative defenses provide less detail than the respective counterclaims, the defenses sufficiently place Ameranth on notice of the grounds for the defenses. *See* ECF No. 2 at 4, 5 (describing the same behavior alleged in equitable estoppel and inequitable conduct counterclaims). Additionally, the inequitable conduct affirmative defense sufficiently alleges the "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106; *see* ECF No. 2 at 5 (describing the same behavior alleged in inequitable conduct counterclaim, including the individuals at Ameranth responsible for the alleged misrepresentation to the PTO regarding the '425 Patent's priority date, why it was a misrepresentation, and the materiality of the misrepresentation).

Defendants' patent misuse affirmative defense alleges in a conclusory manner that the '130, '415, '587, and '425 Patents "were obtained and are being exploited and used in an improper manner than impermissibly broadens the physical and/or temporal scope of the patent grant with anticompetitive effect." ECF No. 2 ¶ 10. For the same reason the Court dismissed Defendants' patent misuse counterclaim, the Court strikes the patent

misuse affirmative defense. *See Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution*, 609 F. Supp. 3d 1092, 1105-06 (C.D. Cal. 2022) (dismissing patent misuse affirmative defense in the absence of "any authority supporting the proposition that inequitable conduct, without some sort of antitrust-type behavior such as tying or licensing conditions, can constitute patent misuse").

In its twelfth affirmative defense, Defendants argue that Ameranth's claims are barred by the unclean hands doctrine because of Ameranth's "misleading silence"; Ameranth's patent misuse; the "undue duress [Ameranth] put on Brink with threats of an expensive lawsuit"; and Ameranth's "inequitable conduct before the PTO." ECF No. 2 ¶ 17.

To prove unclean hands, a defendant must prove first that "the plaintiff engaged in inequitable conduct and, second, that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant." *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009), aff'd, 404 F. App'x 496 (Fed. Cir. 2010). A plaintiff's conduct directly relates to its asserted claim if "the conduct normally would enhance the claimant's position regarding legal rights that are important to the litigation if the impropriety is not discovered and corrected." *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018). An unclean hands defense based on inequitable conduct must satisfy the pleading requirements of Rule 9(b). *See Smith Interface Techs., LLC v. Apple Inc.*, No. 23-CV-1187 TWR (DTF), 2026 LX 82012, at *19 (S.D. Cal. Jan. 28, 2026) (collecting cases).

To the extent Defendants' unclean hands defense is based on Ameranth's alleged inequitable conduct before the PTO, the defense is sufficiently pleaded. *See Consol. Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990) (holding that plaintiff's inequitable conduct in prosecuting a parent patent had "immediate and necessary relation" to its claim seeking enforcement of continuation patents); *Dodocase Vr v. Merchsource*, No. 17-cv-07088-JCS, 2020 U.S. Dist. LEXIS 11511, at *17 (N.D. Cal. Jan. 22, 2020) (concluding that allegations of inequitable, fraudulent, and deceptive conduct

pleaded elsewhere in an answer can support an unclean hands defense). Because the defense survives on this theory, the Court declines to analyze Defendants' other theories underlying the defense. *See Gonzalez*, 2022 LX 127340, at *8.

Ameranth's motions to strike Defendants' Seventh, Ninth, and Twelfth Defenses for equitable estoppel, inequitable conduct, and unclean hands are denied. Ameranth's motion to strike Defendants' Sixth Affirmative Defense for patent misuse is granted.

#### *2. Motion to Strike Counterclaims Based on Immaterial and Impertinent Allegations*

Ameranth moves to strike the entire Amended Counterclaim on the grounds that Defendants' patent-related counterclaims are "immaterial and impertinent to the simple breach of contract issues pled in the Complaint." ECF No. 30-1 at 15. As discussed above, Defendants' counterclaims present a case or controversy, and as such are not immaterial or impertinent. Ameranth's motion to strike the Amended Counterclaim on these grounds is denied.

#### *3. Motion to Strike Counterclaims Based on "Scandalous" Allegations*

Ameranth also moves to strike the entire Amended Counterclaim on the grounds that it is "rife with 'scandalous' and wholly inappropriate content." ECF No. 30-1 at 17.

A pleading is scandalous if it "improperly casts a derogatory light on someone, most typically on a party to the action." *Cortina*, 94 F. Supp. 3d at 1182.

Ameranth argues that Defendant's Amended Counterclaim contains inflammatory, hyperbolic, and derogatory language that should be stricken as scandalous. ECF No. 30-1 at 17-18. Specifically, Ameranth challenges the inclusion of the term "patent troll" in Defendants' pleading, as well as Defendants' characterizations of Ameranth's officers' behavior related to this litigation and litigation against other defendants. *Id.* Ameranth provides no caselaw supporting its arguments beyond generalized recitations of the legal standard. *See* ECF No. 30-1 at 17. Construing the pleading in Defendants' favor, the Court concludes that Defendants' allegations bear on the subject matter of the litigation, as they provide context for Ameranth's licensing strategy, and the litigation landscape against

which Defendants signed the agreement and conducted their business. ECF No. 32 at 16-17. Ameranth's motion to strike the Amended Counterclaim for containing scandalous allegations is denied.

## IV. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal quotation marks omitted).

Defendants may be able to cure the defects identified in their patent misuse counterclaim and affirmative defense. Therefore, the Court **GRANTS** Defendants leave to amend their twelfth counterclaim and sixth affirmative defense alleging patent misuse.

## V. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** Ameranth's Motions to Strike and Dismiss Counterclaim, and to Strike Answer. ECF Nos. 20, 30. Counterclaims 8, 9, and 10, which Defendants concede are moot, are **DISMISSED WITHOUT LEAVE TO AMEND.** Counterclaim 12 and Affirmative Defense 6, alleging patent misuse, are **DISMISSED WITH LEAVE TO AMEND.** Ameranth's motions are otherwise **DENIED**. Defendants' ex-parte motion to file a sur-reply is **GRANTED**. ECF No. 35.

Any amended counterclaims and affirmative defenses must be filed within ***fourteen (14) days*** of the date of this order. If Defendants decline to file an amended counterclaim or answer within that timeframe, the Answer and/or Amended Counterclaim will remain the operative pleadings. Ameranth's response to Defendants' operative counterclaim must be filed ***twenty-eight (28)*** days after the date of this order.

**IT IS SO ORDERED.**

Dated: August 6, 2026

Robert S. Huie

Hon. Robert S. Huie
United States District Judge