UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AMERANTH, INC.,

Plaintiff,

v.

BRINK SOFTWARE, INC., a California corporation; and PAR TECHNOLOGY CORPORATION, a Delaware corporation et al.,

Defendants.

Case No.: 25-cv-2302-RSH-BLM

**ORDER DENYING MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S TWELFTH COUNTERCLAIM AND SIXTH AFFIRMATIVE DEFENSE**

[ECF No. 45]

Before the Court is Plaintiff's motion to dismiss and/or strike Defendants' Second Amended Cross-Complaint's Twelfth Cause of Action and Defendants' Amended Answer's Sixth Affirmative Defense. *See* ECF No. 45 (Pl's Mot. to Dismiss or Strike); ECF No. 44 (Def's Second Am. Cross-Complaint); ECF No. 43 (Def's Am. Answer). For the reasons stated herein, the Court denies the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2025, Plaintiff Ameranth, Inc. ("Ameranth") brought suit against Defendants PAR Technology Corporation ("PAR") and Brink Software, Inc. ("Brink"), a subsidiary of PAR, in California state court, alleging that Defendants failed to make royalty payments in excess of $45 million under a patent licensing agreement between the parties

("Brink License Agreement" or the "Agreement"). *See* ECF No. 18 (California State Court Complaint). Ameranth alleges that, in 2008, four of its former employees left to start Brink. *Id.* ¶ 14. Ameranth alleges that those employees utilized Ameranth's intellectual property in developing Brink's hosted point-of-sale ("POS") restaurant software system. *Id.* ¶ 15. Brink and Ameranth entered into the Brink Licensing Agreement in 2011, whereby Ameranth licensed its intellectual property to Brink in exchange for royalty payments. *Id.* ¶¶ 16–20. Under the Agreement, Brink was granted a license "under the Licensed Patents within the Field of Use only," in exchange for making lump sum and quarterly royalty payments for its "online/mobile food/drink ordering/menu hosting system/service." *Id.* ¶¶ 20–21. Field of Use was defined as follows:

> ***"Field of Use"*** shall mean use for customer/consumer online/mobile and/or call center food/drink ordering and/or menu hosting. Staff/employee use within a restaurant or other hospitality establishment is included at a different and special license price as indicated. Call center (off site) staff usage is within the Field of Use.

*Id.* ¶ 18. PAR acquired Brink in 2014 and continued making royalty payments under the Agreement. *Id.* ¶¶ 28–19. In April 2020, Defendants stopped making payments under the Agreement. *Id.* ¶ 32. The parties participated in mediation in 2021. *Id.* ¶ 62. Plaintiff brought suit in July 2025, and Defendants removed the case to federal court on September 4, 2025. ECF No. 1.

On March 5, 2026, this Court denied Ameranth's motion to remand the case to state court. ECF No. 31. On August 6, 2026, this Court dismissed four of Defendants' counterclaims against Ameranth. ECF No. 38. Defendants conceded that three of the four dismissed counterclaims were moot, and the Court therefore dismissed those counterclaims without leave to amend. *Id.* at 21. The Court dismissed Defendants' other counterclaim against Ameranth—seeking declaratory judgment that Ameranth's patents were invalid under the doctrine of patent misuse—with leave to amend. *Id.* As to the patent misuse claim, the Court explained that:

> Defendants allege two theories of patent misuse. First, Defendants allege that Ameranth impermissibly extended the temporal scope of patents it knew to be invalid, by using them as the parent patents from which it obtained continuation patents. ECF No. 25 ¶¶ 187-88. Specifically, Defendants allege that because the claims of the '130, '415, '587, and '425 Patents are "patentably indistinct from the claims of the '077 and '651 Patents that the Federal Circuit held are patent ineligible under 35 U.S.C. § 101," Ameranth now seeks royalties on patents it knows to be invalid. *Id.* Defendants' second theory of misuse is that Ameranth "is now asserting that Defendants pay royalties for the Ameranth Patent Family on activities that fall within the scope of a 'Field of Use,' but do not fall within the scope of the patent claims of the Ameranth Patent Family." *Id.* ¶ 189. . . .
>
> Here, Defendants' theories of patent misuse do not appear to fall into the categories of behavior that courts have recognized as patent misuse. *See* 6A Chisum on Patents § 19.04 (2026) (enumerating acts of misuse).
>
> As to the first theory, Defendants cite no authority demonstrating that obtaining continuation patents that claim priority to ineligible patents is patent misuse. *See* ECF No. 32 at 20-21. As to the second theory, the Supreme Court has held that patent misuse occurs in the context of royalty agreements when "a royalty agreement . . . projects beyond the expiration date of the patent," *Brulotte v. Thys Co.*, 379 U.S. 29, 32-33 (1964), or when the grant of the patent license is conditioned "upon payment of royalties on products which do not use the teaching of the patent," *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 135 (1969). In *Zenith Radio*, the Supreme Court elaborated that such misuse occurs when a patentee "coerce[s] an agreement" that "insist[s] on a percentage-of-sales royalty, regardless of use," even over the licensee's "protestations" and "proposals to pay only for actual use." 395 U.S. at 139-40. Although Defendants' second theory bears some resemblance to the scheme the Supreme Court found unlawful in *Zenith Radio*, it falls outside the bounds of the contracting behavior prohibited by that opinion, as here, Defendants' patent misuse allegations focus on Ameranth's conduct in the instant litigation, rather than the language of the contract itself. Here, the Brink License Agreement covers Brink's use of only the "*Licensed Patents* within the Field of Use"—an arrangement that does not run afoul of *Zenith Radio*. ECF No. 25 ¶ 87 (emphasis added).

ECF No. 38 at 13–14. On August 20, 2026, Defendants filed the Amended Answer and Second Amended Cross-Complaint. ECF Nos. 43, 44. Ameranth filed a motion to dismiss on September 3, 2026, requesting dismissal only of Defendants' amended Counterclaim 12 and Affirmative Defense 6 for Patent Misuse. ECF No. 45.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, the Court accepts all material factual allegations as true and draws all reasonable inferences in favor of the non-movant. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Conclusory allegations need not be accepted as true. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

## III. ANALYSIS

"[T]he basic rule of patent misuse" is "that the patentee may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'" *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (quoting *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)). In *Brulotte v. Thys Co.*, 379 U.S. 29, 33 (1964), the Court explained that while "[a] patent empowers the owner to exact royalties as high as he can negotiate with the leverage of that monopoly," it does not permit the owner to "enlarge the monopoly of the patent," including by demanding royalty payments beyond the life of the patent. The doctrine of patent misuse reflects the policy that a patentee should not be permitted "to obtain [a] market benefit beyond that which inheres in the statutory patent right." *Princo*, 616 F.3d at 1328 (citation omitted). However, the doctrine is narrow and "confine[d] . . . to conduct having anticompetitive effects." *Id.* at 1330.

In determining whether to license a patent, a patent owner has significant discretion. *Id.* at 1328–29. For example, the owner may suppress the invention while preventing all

others from using it, license or refuse to license the patent, charge a royalty "as the leverage of the patent monopoly permits," or "limit the scope of the license to a particular field of use." *Id.* (internal quotation marks and citation omitted). What an owner cannot do, however, is "use[] his patent to obtain protection from competition in the sale of unpatented materials." *Transparent-Wrap*, 329 U.S. at 644. Doing so violates the rule that a patentee cannot "extend the monopoly of his patent to derive a benefit not attributable to [the] use of the patent's teachings." *Zenith Radio Corp. v. Hazeltine Rsch.*, 395 U.S. 100, 136 (1969). Accordingly, a patent cannot "be used to garner as royalties a percentage share of the licensee's receipts from sales of other products." *Id.*; *see also id.* at 139 (The Court's precedents do not "authorize the patentee to use the power of his patent to insist on a total-sales royalty and to override protestations of the licensee that some of his products are unsuited to the patent or that for some lines of his merchandise he has no need or desire to purchase the privileges of the patent. In such event, not only would royalties be collected on unpatented merchandise, but the obligation to pay for nonuse would clearly have its source in the leverage of the patent.").

Defendants' amended complaint contains the following allegations concerning patent misuse:

> The Brink License Agreement grants Brink a license only "under the Licensed Patents within the Field of Use." The "Field of Use" limits the permissible scope of any licensed activity. It does not expand the Licensed Patents, and it does not permit Ameranth to collect patent royalties on products or services that do not practice the Licensed Patents. Ameranth did not disclose during negotiations that it intended to demand royalties on all transactions within the Field of Use regardless of whether those transactions practiced any claim of any Licensed Patent.
>
> Ameranth nevertheless has asserted, under threats of litigation, that Defendants pay royalties on all Brink/PAR online, mobile, food/drink ordering, menu-hosting, and POS-related activity within Ameranth's asserted "Field of Use," regardless of whether the accused activity practices any claim of any Licensed Patent.
>
> When Defendants raised with Ameranth, including in the 2020–2021 correspondence and mediation described in ¶¶99–111, supra, that no royalties were owed because Defendants' products did not practice any valid claim,

Ameranth argued that all that was required was a transaction within the Field of Use. Ameranth did not offer, and has never offered, to recalculate or condition royalties on actual practice of a valid claim. Ameranth has instead continued to insist on Field of Use payment regardless of use, including in its September 11, 2020 letter (Ex. 6 at 1-2), and most recently its June 10, 2025 letter demanding royalties under the ’130, ’415, ’587, and ’425 Patents without regard to whether Defendants’ Brink POS™ SaaS Solution practices any valid claim of those patents. ¶123, supra; Dkt. 18 at PageID.686-87.

Ameranth’s asserted interpretation converts the Field of Use from a limitation on the licensed patent rights into an independent royalty obligation covering unpatented and non-practicing activity.

Defendants have disputed Ameranth’s demand for royalties on non-practicing products and services and have maintained that any royalty obligation must be limited to actual use of the Licensed Patents. Ameranth rejected that limitation. Ameranth instead insists that Defendants must pay royalties on all activity within Ameranth’s asserted “Field of Use,” whether or not any Licensed Patent is practiced.

Ameranth’s demand is not, and was never intended, to be a mutually convenient royalty measurement provision. Ameranth is using the leverage of the Licensed Patents to extract royalties for products, services, transactions, and customer deployments that do not use the teachings of the Licensed Patents.

This pattern—imposing payment measured by a defined field of commercial activity, rejection of any patent use-based alternative, and continued enforcement of that structure under threats of litigation, both pre- and post-suit, notwithstanding Defendants’ repeated assertions that the underlying patents are invalid or not practiced—describes the terms on which Ameranth has negotiated, and continues to enforce, the license itself. Ameranth is impermissibly broadening the physical scope of the patent grant with anticompetitive effect.

Ameranth’s conduct impermissibly broadens the physical scope of the Licensed Patents by extending the royalty burden to unpatented and non-practicing products and services. Ameranth’s conduct also has anticompetitive effects because it imposes an artificial patent-based tax on non-practicing restaurant technology products and services, raises Defendants’ costs for products outside the patent claims, discourages design-arounds and non-infringing alternatives, and restrains competition in hospitality ecommerce technology markets.

Ameranth’s misuse renders both the Licensed Patents and the Brink License Agreement unenforceable. Defendants seek a Judgment barring Ameranth’s claims and awarding Defendants their attorneys’ fees.

ECF No. 44 ¶¶ 178–179, 181–87.

In short, Defendants allege that Ameranth abused its patents to extract royalties under the Licensing Agreement for products beyond the scope of its patents. Ameranth does not seem to disavow Defendants' characterization of Ameranth's interpretation of the Licensing Agreement. *See generally* ECF No. 45-1; ECF No. 47 (Pl's Reply ISO Mot. to Dismiss). Rather, Ameranth argues that Defendants complain only of conduct that postdated the execution of the Licensing Agreement or of Ameranth's litigation tactics. *See id.* However, Defendants' factual allegations are not so limited. It may be the case, as Ameranth asserts in its own complaint, that royalties are properly due to Ameranth under the Agreement. At this stage, however, in addressing Ameranth's motion to dismiss Defendants' counterclaim, the Court must take Defendants' allegations as true. The Court finds that these allegations are sufficient to state a counterclaim for patent misuse.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Dismiss or Strike Counterclaim 12 in Defendants' Second Amended Cross-Complaint and Affirmative Defense 6 in Defendants' Amended Answer.

**IT IS SO ORDERED.**

Dated: October 22, 2026

Hon. Robert S. Huie
United States District Judge